UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                                                                 No. 07-C-316

v.

MENOMINEE TRIBAL ENTERPRISES,
MARSHALL PECORE, and CONRAD WANIGER,

    Defendants.

## ORDER

On December 4, 2009, counsel for Defendants Pecore and Waniger filed a letter asking that this Court set a briefing schedule for their motion for fees and laying the groundwork for such a motion. (Dkt. # 359.) Almost half of the seven-page letter, however, set forth counsel's concern about this Court's impartiality regarding that motion. Upon review of the letter, I decided to construe it as a formal motion for recusal and directed further briefing on the motion. Counsel has now responded and indicated that he was not seeking recusal but merely asking the Court to "examine any potential biases against the defendants or their lawyers with respect to deciding future litigation in this case." (Dkt. # 368 at 2.) The purpose of the original letter was to "raise questions" about my impartiality in light of what counsel views as a pattern of "deferential rulings" in favor of the government in this action. In counsel's words, the letter was an attempt to explain why, if I ultimately rule against the defendants on their motion for fees, such a decision might appear less than impartial. "[D]efense counsel merely wanted to give the Court a chance to reflect on the question of bias." (*Id.* at 5.)

I construed the original letter as a motion for recusal because there is no other category in which to place it while still assuming good faith. I am unaware of any procedure, precedent or other instance of counsel filing a letter with the judge presiding over his case in which he cautions the judge to be impartial in the manner counsel has done. Judges do not need to be reminded to fulfill their constitutional duties and live up to their ethical obligations. If the letter was not a request for recusal, then what was it? A threat? Was it a warning that if I do not rule in his clients' favor, counsel will file an ethics complaint? Or was it an attempt to get a "make up call" to balance out the alleged pattern of rulings I made in favor of the government? If the letter was not a request for recusal, it was an improper effort to influence the presiding judge to rule favorably on the expected motion or else face an argument of bias. And that is why I construed it (and continue to construe it) *not* in those terms but as a formal request for recusal – I presume counsel is *not* attempting to exert improper influence or to threaten the Court.

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Defendants Pecore and Waniger assert that I displayed a pattern of deference to the government throughout these proceedings. For instance, they argue that I showed bias in ruling on the defendants' motion for summary judgment by suggesting that the government appeared to have a very strong case. This is a puzzling argument. At the summary judgment stage, of course, the court is required to view the evidence in the light most favorable to the opposing party. *Illinois Cent. R. Co. v. South Tec Development Warehouse, Inc.*, 337 F.3d 813, 816 (7th Cir. 2003). In deciding the defendants' motion, this meant the United States. Moreover, I *denied* the government's motion for summary judgment on the False Claims Act claims against Pecore and Waniger. Had I labored under some sort of bias, the result could easily have come out the other

2

way. In fact, counsel's decision to cite a few stray *dicta* out of context suggests a purposeful effort to *invent* an issue rather than to prove one. The very paragraph in which I suggested the government's case was "strong" reflected the very questions that must have occupied the jury – including the confusing nature of the BIA's expectations, as well as the lack of any financial motive for these defendants to have violated the FCA:

> My review of the record suggests that the Government's case is a strong one. It has maps and other submissions that it believes its evidence will show to be false. The individuals responsible for submitting the invoices were in an excellent position to either know they were false or to be reckless in not verifying their accuracy. On the other hand, there was clearly some significant give and take regarding the invoices at issue here. The Defendants would argue that they believed they were complying with what the BIA wanted. Moreover, it was obvious by the time the invoices were re-submitted that the BIA had significant veracity issues. To re-submit the invoices with false information after knowing the BIA was concerned about their truth could have been either brazen or wholly innocent, and that is a determination that cannot be made on summary judgment. In addition, there is no allegation that either of the Defendants personally profited from the fraud (unlike Krizek or Mackby). Although personal profit is not an element of an FCA case, it could at least suggest the mistake was an innocent one rather than one made with reckless disregard for the truth. These latter points may be undercut by the fact that the FCA does not require a specific intent to defraud, but they at least call into question the reckless disregard issue. The point is that I cannot conclude on summary judgment that the facts mandate judgment in the Government's favor. Accordingly, its motion will be denied.

(Dkt. # 257 at 23-24.)

In ruling in the defendants' *favor*, I simply noted both sides of the argument and concluded that a trial would be necessary to sort it out. I cannot envision a reasonable person reading the above and concluding that the judge had some sort of pro-government bias.

In addition, in that same ruling I found against the government on two highly contested and novel issues: the statute of limitations under 25 U.S.C. § 450j-1(f) and the question of whether MTE was a "person" under the FCA. And less than two weeks before trial, over the vigorous objection of the government, I reversed a previous ruling excluding extensive video and other

3

evidence from the defendants' expert that was not timely disclosed by the defense. A motion for recusal is not an invitation to draw up a ledger to tally "for" and "against" rulings, but surely if there were some sort of underlying "pro-government" or "deferential" bias at work this Court would not have ruled against the government on the two legal issues, particularly where no binding precedent was applicable, and relieved the defendants of the consequences of their attorney's late disclosure.

It is true that counsel's conduct has aroused this Court's serious concerns, and the confusing nature of the December 4 letter is just another instance of that. The truth is that counsel's conduct during the trial was trying on all parties, including the jury. Counsel's suggestion that it is inappropriate for the Court to interrupt an attorney during trial absent an objection by opposing counsel reflects a misunderstanding of the role of a judge presiding over a trial. A judge presiding over a jury trial has an independent obligation to insure that it proceeds in an orderly manner with a "presentation effective for the ascertainment of the truth" and is not unduly repetitious so as to "avoid the needless consumption of time." Fed. R. Evid. 611(a); *United States v. Simpson*, 337 F.3d 905, 907 (7th Cir. 2003). The government was no doubt frustrated by the level of disorganization this Court tolerated from defense counsel – unmarked and multiple copies of the same exhibits, lack of copies, repetitive and incoherent questions, etc. This Court was confronted with repeated abuses of basic and routine trial procedure, as well as counsel's narrative approach to witness examination and an unwillingness to engage in questions and answers. Without even consulting the Court, counsel at one point set up a copy machine in the back of the courtroom. Until a juror complained to the bailiff, I was unaware that counsel's associate was running copies while witnesses were testifying.

My rulings were a measured attempt to deal with a level of disorganization I had not seen before in almost fifteen years on the state and federal bench. Moreover, I was unwilling to allow the trial of a False Claims case to turn into a forum to entertain anti-government sentiments and theories about how the Menominee Tribe has generally been treated by the government. I also rejected counsel's request that I submit the defendants' request for attorneys fees under the EAJA to the jury for the simple reason that the statute, by its plain terms, provides that such fees, if appropriate, are awarded by the court. 28 U.S.C. § 2412(d)(1)(A). An argument could be made that I was overly patient with counsel and too generous with the jury's time.

I need not belabor the point. Although counsel is correct to perceive that his performance has not generated great admiration from this Court, there is absolutely no basis to conclude that I have any sort of "bias" against him or his clients. During the course of this case, I have also acknowledged that the government's case against Pecore and Waniger may not be a wise use of government resources – spending nearly a decade of time and effort to attempt to prove false claims totaling only a few thousands of dollars. (Even if the government's exercise of prosecutorial discretion was questionable, however, that does not necessarily mean it had no reasonable basis to bring the lawsuit.) In sum, I conclude that counsel's efforts to question my impartiality are either based on a subjectively felt misapprehension of bias or suggestive of an effort to generate an issue for appeal. Either way, I conclude that there is no reasonable basis to question my impartiality in deciding the motion for fees. The motion for recusal is therefore denied.

The government having indicated that it does not intend to appeal the judgement previously entered in the case, the defendant's request for fees will soon be ripe for consideration, and I will therefore grant their request to adopt a briefing schedule. Consistent with defendants' proposal, their motion on attorney's fees will be due February 1; the government's response will be due

5

March 3.  A reply, if any, may be filed by March 31.  Defendants have indicated an intent to seek discovery on the remaining fees issue.  The Court has not been asked to rule on the question of whether additional discovery should be allowed, but if it is and the need to complete such discovery results in delay, the above schedule may be modified to accommodate such delay.

**SO ORDERED** this   19th   day of January, 2010.

  s/ William C. Griesbach  
William C. Griesbach  
United States District Judge